UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| FRANKLIN BROWN, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 3:15cv1086 (DJS) |
| | : | |
| OFFICER FREDRICK DIRGA | : | |
| Defendant. | : | |

## RULING ON MOTION FOR SUMMARY JUDGMENT

The plaintiff, Franklin Brown ("Brown"), currently resides in Middletown, Connecticut. He initiated this action by filing a complaint listing himself and Karen Rogala ("Rogala") as plaintiffs and the Middletown Police Department, Middletown Police Officers Fredrick Dirga ("Dirga") and John Doe, and Middletown Police Detective Del Mauro ("Del Mauro") as defendants.

On November 2, 2015, the court directed the Clerk to terminate Rogala as a plaintiff because she had not signed the complaint and dismissed all claims against the Middletown Police Department and John Doe, any claims asserted or relief requested on behalf Rogala, and the official capacity claims for money damages against Dirga and Del Mauro. *See* ECF No. 8. The court concluded that the Fourth Amendment excessive force and illegal search and seizure claims would proceed against defendants Dirga and Del Mauro in their individual capacities. *See id.*

1

On May 10, 2016, during a status conference, the plaintiff orally moved to dismiss all claims against Del Mauro. *See* ECF No. 61. Magistrate Judge Merriam issued a recommended ruling granting the motion to dismiss with prejudice. *See* ECF No. 64. On June 8, 2016, the court affirmed, adopted and ratified the recommended ruling granting the motion to dismiss as to all claims against defendant Del Mauro. *See* ECF No. 71. Thus, Del Mauro has been dismissed from this action with prejudice.

On September 19, 2016, Brown filed motions to amend the complaint and for joinder of claims and parties. *See* ECF Nos. 94, 95. He sought leave to add new claims of assault and battery and false arrest and to add the City of Middletown, Captain Patrick Howard, Chief William McKenna, Captain Wallace and Lieutenant Davis as new defendants. On October 4, 2016, the court denied both the motion to amend and the motion for joinder of parties and claims on the grounds that the addition of the new claims and defendants would be futile and would prejudice the remaining defendant and because the requests to add claims and defendants was unduly delayed. *See* ECF Nos. 103, 107.

On October 7, 2016, Brown sought to voluntarily dismiss his claims against Dirga. *See* ECF No. 104. On November 10, 2016, the court denied the motion for voluntary dismissal. *See* ECF No. 108.

Thus, the Fourth Amendment excessive force and illegal search and seizure claims as asserted in the complaint, ECF No. 1, remain pending against Dirga. On February 17, 2017, Dirga moved for summary judgment as to all claims against him. For the reasons set forth below, the motion is granted in part and denied in part.

## I.     Standard of Review

In a motion for summary judgment, the burden is on the moving party to establish that

there is "no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law." Rule 56(a), Fed. R. Civ. P.  A fact is "material" if it "might affect the outcome of the suit under the governing law," and is "genuine" if "a reasonable jury could return a verdict for the nonmoving party" based on it.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the nonmoving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation."  *Robinson v. Concentra Health Services, Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (internal quotation marks omitted).   Thus, the party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact."  *Id.*

In reviewing the record, the court must "construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor."  *Gary Friedrich Enterprises, L.L.C. v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013).  Summary judgment is improper if there is any evidence in the record from which a reasonable factual inference could be drawn in favor of the nonmoving party. *See Security Insurance Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

Where one party is proceeding *pro se*, the court reads the *pro se* party's papers liberally and interprets them "to raise the strongest arguments that they suggest."  *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (internal quotation marks omitted).  Despite this liberal interpretation, however, "[u]nsupported allegations do not create a material issue of fact" and

cannot overcome a properly supported motion for summary judgment. *See Weinstock v. Columbia University*, 224 F.3d 33, 41 (2d Cir. 2000).

## II.     Facts[1]

At approximately 10:00 p.m. On October 14, 2013, Brown and his girlfriend, Rogala, boarded a bus at a Walmart store in Cromwell, Connecticut, and were dropped off at a bus stop on Main Street in Middletown, Connecticut.  At that time Brown was in possession of crack cocaine which he had purchased earlier that day.

After getting off the bus, Brown and Rogala walked along Main Street toward the intersection of Main Street and Liberty Street. Brown and Rogala used the crosswalk to cross Main Street and kept walking straight toward the street corner at the intersection of Main Street and Liberty Street.

On October 14, 2013, Dirga was a Detective in the Middletown Police Department's Narcotics Unit.   At about 10:00 p.m. on that date, Dirga, in an undercover capacity, was conducting surveillance in the area of Main and Liberty Streets in Middletown, Connecticut.   He was parked in an unmarked GMC Envoy in an area close to the intersection of Main and Liberty Streets.  Based on his knowledge, training and experience, Dirga knew that the Main Street-Liberty Street area was a high crime area and that many complaints had been made about the

---

[1]  The relevant facts are taken from Dirga's Local Rule 56(a)1 Statement [ECF No. 111-2] and Exhibits submitted in support of the Local Rule 56(a)1 Statement [ECF Nos. 111-4 through 111-13], and Brown's Local Rule 56(a)2 Statement, [ECF No. 117] at 3-5, and Exhibits, submitted in support of the Local Rule 56(a)2 Statement, [ECF No. 117] at 6-13 and the complaint, [ECF No. 1] which the court treats as a declaration because it includes a certification under penalty of perjury that the contents of it are true and accurate.  *See Franco v. Kelly*, 854 F.2d 584, 587 (2d Cir. 1988) (citing *Pfeil v. Rogers*, 757 F.2d 850, 859 & n.15 (7th Cir. 1985)) (documents sworn under penalty of perjury may suffice for summary judgment purposes even if they do not meet all of the formal requirements of a notarized affidavit).

sales of narcotics, as well as prostitution and violent crimes, in that area.

On the night of October 14, 2013, there were a number of illuminated streetlights in the area of Main and Liberty Streets. In addition, there were lights mounted on a building at the corner of Main and Liberty Streets which illuminated Liberty Street and there was ambient lighting from houses and businesses nearby.[2]

Brown and Rogala passed several individuals on the corner of Main and Liberty Streets and continued to walk down Liberty Street. As Brown and Rogala proceeded down Liberty Street, an individual named Jeffrey Williams ("Williams"), also known as Charlie Brown, approached Brown and stated that he wanted to buy drugs. Brown indicated that he had no drugs and told Williams to move away from him. Williams became angry, swore at Brown, pulled out his cell phone and called Dirga's cell phone. Williams reported to Dirga that Brown was in the area of Main and Liberty Streets, was wearing a red shirt, and was selling narcotics. During Williams's conversation with Dirga, Brown continued to walk down Liberty Street with Rogala. Brown and Dirga stopped on Liberty Street near a red building and sat down on steps located next to that building.

After receiving the call from Williams, Dirga drove his vehicle from where he was

---

[2]Although Brown denies these and other facts, many of his denials are not supported by "(1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial" as is required by the Rules of this Court. L. Civ. R. 56(a)3. In this instance, Brown's denial refers simply to three photographs attached to his Local Rule 56(a)2 Statement (presumably photographs of the intersection in question) and to an affidavit that does not address these facts in any way. In other instances, Brown's denials similarly cite to an affidavit that does not support his denial. See, e.g., Brown's response to paragraph 27 of the defendant's Local Rule 56(a)1 Statement. (Doc. # 117, at 4, ¶ 27). Pursuant to the Local Rules of this Court, to the extent Brown has not complied with the Rules of this Court and the facts asserted by the defendant are properly supported by the evidence, the defendants' facts will be deemed admitted: "[F]ailure to provide specific citations to evidence in the record as required by this Local Rule may result in the Court deeming certain facts that are supported by the evidence admitted . . . ." L. Civ. R. 56(a)3.

parked on Main Street to Liberty Street and parked near the red building on Liberty Street. Dirga knew that Brown had been arrested on multiple occasions for weapons and drug possession charges as well as other violent crimes. Dirga had been involved in some of Brown's prior arrests. Dirga used his police radio to call for backup. Detective Del Mauro was patrolling close to the area and responded to Dirga's call.

When Dirga stopped his vehicle near the red building on Liberty Street, Brown observed that Dirga was a police officer, got up, and began walking away from Dirga down Liberty Street with Rogala. Dirga exited his vehicle. Brown recognized Dirga from previous interactions between himself and Dirga.

Dirga stepped onto the sidewalk and walked around Brown so that he was standing in Brown's path of travel. Brown asked Dirga if he was under arrest and Dirga stated that he did not know but asked Brown to wait a minute. Brown claimed that he had not committed any crimes and began to walk away from Dirga down Liberty Street. Dirga asked Brown if he had anything illegal in his possession, but Brown did not respond and continued to walk down Liberty Street. Dirga then grabbed Brown's right arm, put it behind Brown's back and pushed Brown up against a car that was parked on Liberty Street. Brown tightened up a little, but did not pull his arm away. Dirga searched Brown and discovered crack cocaine in one of Brown's pockets. At some point after Dirga grabbed Brown's arm, Brown attempted to walk away.

Detective Del Mauro arrived at the scene and grabbed Brown's left arm. Detective Del Mauro took Brown to the ground while Dirga was still holding onto Brown's right arm. According to Brown, Dirga "punch[ed] plaintiff several times" during this period.[3] Brown's

---

[3] Because Brown has supported this fact with an affidavit from Rogala and his own declaration, the Court must, for purposes of ruling on the defendant's motion, "consider the facts in the light

Local Rule 56(a)2 Statement, Ex. 5, ECF No. 117 at 4. While Brown lay on his stomach, Detective Del Mauro and Dirga were able to handcuff Brown behind his back, stand him up, place him in a police vehicle and transport him to the Middletown Police Department for booking and processing.

Dirga charged Brown with possession of crack cocaine in violation of Connecticut General Statutes § 21a-279(a), possession of crack cocaine with intent to sell in violation of Connecticut General Statutes § 21a-278(b), possession of crack cocaine with intent to sell within 1500 feet of a school zone in violation of Connecticut General Statutes § 21a-278a(b), interfering with a police officer in violation of Connecticut General Statutes § 53a-167(a), and assault on a police officer in violation of Connecticut General Statutes §53a-167(c).   Within a few days of his arrest, Brown was released officers released on bond.

On February 26, 2015, Brown pleaded guilty to the charge of possession of crack cocaine in violation of Connecticut General Statutes § 21a-279(a) that arose from his arrest on October 14, 2013.  On March 19, 2015, a judge sentenced Brown to a total effective sentence of two years of imprisonment.[4]

On November 25, 2013, Brown filed a civilian complaint with the Middletown Police Department regarding his arrest on October 14, 2013.  Lieutenant Richard Davis's investigation of the complaint included interviews with Brown, Dirga, Detective Del Mauro, Rogala and other witnesses.  After the investigation, Lieutenant Davis concluded that Brown's complaint could not

_____

most favorable to [Brown], the non-moving party." *Simpson v. City of New York*, 793 F.3d 259, 262 (2d Cir. 2015).

[4]  Information regarding Brown's criminal conviction and sentence may be found at: http://www.jud.ct.gov/jud2.htm under Criminal/Motor Vehicle Case Look-up, Convictions – Search by Docket Number using Case Number M09M-CR-13-0202063-S.

be sustained.

**III.  Discussion**

    Dirga moves for summary judgment on multiple grounds.   He argues that: (1) the claim that he illegally stopped Brown fails because the stop was based on consent, reasonable suspicion and probable cause; (2) the search and seizure of Brown was made pursuant to a valid arrest based on probable cause; (3) Brown's false arrest claim is not viable; (4) there are no facts to show his personal involvement in the alleged use of excessive force against Brown; (5) if he were involved, all force used was objectively reasonable and Brown's injuries were *de minimus*; and (6) he is entitled to qualified immunity as to all claims.

    As a preliminary matter, the court notes that Brown's memorandum in opposition to the motion for summary judgment includes an argument that the court should deny the motion because he still needs to depose two witnesses, Shamese Blake and Gary Stewart, whom he located after his release from prison in December 2016.  *See* Memo Opp'n Mot. Summ. J., ECF No. 117 at 1.   Brown contends that Magistrate Judge Merriam previously informed him that if he were able to locate his witnesses, he could depose them both.  *See id.*   He states that he provided the names of both witnesses to counsel for Dirga before counsel moved for summary judgment.

    Federal Rule of Civil Procedure 56(d) permits a court, in the exercise of its discretion, to defer or deny a decision on summary judgment if a "nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Rule 56(d) requires "submitting an affidavit that includes the nature of the uncompleted discovery; how the facts sought are reasonably expected to create a genuine issue of material fact; what efforts the affiant has made to obtain those facts; and why those efforts were

unsuccessful." *Whelehan v. Bank of America Pension Plan for Legacy Companies–Fleet—Traditional Benefit*, 621 F. App'x 70, 73 (2d Cir. 2015) (summary order) (internal quotation marks omitted).

When a party submits an affidavit pursuant to Rule 56(d) which includes insufficient or conclusory descriptions of forthcoming evidence and/or how that evidence would demonstrate the existence of a genuine issue of material fact, courts routinely deny such requests to continue discovery. *See, e.g.*, *Gualandi v. Adams*, 385 F.3d 236, 245 (2d Cir. 2004) (affirming district court's implicit denial of discovery where plaintiff failed to "demonstrate that additional discovery was needed in order to decide the . . . issue [before the court]"); *United States v. Private Sanitation Industry Association of Nassau/Suffolk, Inc.*, 995 F.2d 375, 377 (2d Cir. 1993) (affirming district court's denial of discovery where affidavit "only speculated about what further discovery might reveal" and failed to "describe[ ] in specific terms evidence that might be forthcoming and would demonstrate that a genuine issue actually existed"). Moreover, "[a] court is not required to withhold consideration of a summary judgment motion based on mere speculation." *Roswell Capital Partners LLC v. Alternative Construction Technologies*, 638 F. Supp. 2d 360, 372 (S.D.N.Y. 2009).

Brown has not filed an affidavit or declaration in support of his request to continue discovery. In addition, his contention that Magistrate Judge Merriam had previously authorized him to conduct depositions of two witnesses if he were able to discover their addresses is belied by Judge Merriam's ruling on Brown's motion seeking an extension of time to file a joint trial memorandum. *See* Order, ECF No. 115. Judge Merriam construed the motion for extension of time as also seeking leave to reopen discovery to conduct the depositions of these same two witnesses and denied the motion for failure to show good cause for the request to reopen

discovery. Judge Merriam noted that Brown was not diligent in attempting to comply with the court's discovery deadlines and that reopening discovery would prejudice Dirga. *See id.* at 3-5.

In addition to the fact that Judge Merriam did not previously authorize Brown to conduct the depositions of witnesses Blake and Stewart, Brown has not demonstrated how any undiscovered evidence could create a genuine issue of material fact. Thus, the court concludes that Brown has not met the necessary requirements of Rule 56(d) in order to grant him additional time to conduct discovery. Accordingly, the court will not defer ruling on the motion for summary judgment to permit Brown to conduct additional discovery.

### A.    Initial Stop

The Fourth Amendment to the United States Constitution states that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall be not violated. . . ." U.S. Const. amend. IV. It is clear from the language of the Fourth Amendment that "the ultimate measure of the constitutionality of a government search or seizure is reasonableness." *United States v. Bailey*, 743 F.3d 322, 331 (2d Cir. 2014) (internal quotation marks). Reasonableness is "generally determined by balancing the particular need to search or seize against the privacy interests invaded by such action." *Id.*

The Supreme Court has held that an individual may permissibly be "stop[ped] and briefly detain[ed] . . . for investigative purposes" by a police officer when there is at least "a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (internal quotation marks omitted). "The principle components of a determination of reasonable suspicion . . . will be the events which occurred leading up to the stop . . . and then the decision whether these historical

facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion. . . ." *Ornelas v. United States*, 517 U.S. 690, 696 (1996). Reasonable suspicion exists if the officer has a "particularized and objective basis for suspecting the person stopped of criminal activity." *Id.* (internal quotation marks omitted).

It is undisputed that Jeffrey Williams called Dirga and reported that at that time Brown was in the area of Main Street and Liberty Street selling narcotics and was wearing a red shirt. Dirga avers that Jeffrey Williams had previously supplied him with information about narcotics transactions in Middletown which had led to the convictions of those involved in the transactions. *See* Dirga's Local Rule 56(a)21 Statement, Ex. C, ECF No. 111-13, Dirga Aff. ¶¶ 8-9. It is also undisputed that Dirga knew that Brown had multiple prior arrests for various offenses, including offenses involving drugs, and had been personally involved in arresting Brown on prior occasions. Based on the information available to Dirga, he had a "particularized and objective basis for suspecting the person stopped of criminal activity." *Ornelas*, 517 U.S. at 696 (internal quotation marks omitted). Thus, the stop and detention of Brown as he walked down Liberty Street was reasonable under the Fourth Amendment. The motion for summary judgment is granted as to the claim that the initial stop of Brown on October 14, 2013 violated the Fourth Amendment.

### B. Seizure or Arrest of the Plaintiff

Brown contends that Dirga did not have probable cause to arrest him on October 14, 2013. Dirga responds that the circumstances known to him at the time established probable cause to arrest Brown.

To effectuate the protection of the Fourth Amendment, a police officer is generally required to obtain a warrant from a judicial officer before conducting a search or a seizure. *See*

*California v. Carney*, 471 U.S. 386, 390 (1985). It is well established, however, that an arrest without a warrant is valid if it is supported by probable cause. *See United States v. Watson*, 423 U.S. 411, 417 (1976).

Probable cause exists when police officers have "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). Probable cause does not require a police officer to be certain that the individual arrested will be prosecuted successfully or to continue investigating a claim of innocence prior to making the arrest. *See Panetta v. Crowley*, 460 F.3d 388, 398 (2d Cir. 2006).

"[I]nformation gleaned from informants can be sufficient to justify the existence of probable cause." *Id.* at 395. Thus, if a police officer receives information from an individual that a crime has been committed, the officer "has probable cause to arrest" the individual who was identified as having committed the crime, "unless the circumstances raise doubt as to the [reporting] person's veracity." *Id.* (internal quotation marks omitted omitted). The "reliability or veracity of the informant and . . . the basis for the informant's knowledge" are two important factors. *Caldarola v. Calabrese,* 298 F.3d 156, 162. (2d Cir. 2002). "[A] tip from a known informant whose reputation can be assessed and who can be held responsible if [his] allegations turn out to be fabricated" is a significant factor in establishing probable cause. *Florida v. J.L.,* 529 U.S. 266, 270 (2000).

The Second Circuit and lower courts have consistently held that even if the arrestee protests his innocence at the time of the arrest, the existence of such conflicting evidence does not vitiate the probable cause established by an eyewitness informant. *See, e.g., Panetta*, 460

F.3d at 395-96 ("[A]n officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause."); *Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (finding probable cause despite conflicting accounts of arrestee and two eyewitnesses, where eyewitnesses' statements inculpated arrestee). Thus, "once officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury. Their function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence." *Panetta*, 460 F.3d at 396 (internal quotation marks omitted).

Jeffrey Williams, who was known to Dirga as having provided reliable information to him and other officers in the past regarding narcotics sales, called Dirga on October 14, 2013, to inform him that Brown was wearing a red shirt and was selling narcotics in the area of Liberty and Main Streets in Middletown. Thus, Dirga possessed information from a known informant, which can be sufficient for a finding of probable cause, particularly when it is buttressed by other indicia of reliability. *See United States v. Wagner*, 989 F.2d 69, 72 (2d Cir. 1993) ("Information may be sufficiently reliable to support a probable cause finding if the person providing the information has a track record of providing reliable information").

In addition, Dirga knew that the intersection of Main and Liberty Streets was a high crime area and that numerous complaints regarding the sale of narcotics in that area had been made in the past. Furthermore, Dirga knew that Brown had been arrested on multiple occasions for weapons and drug possession charges, as well as other violent crimes, and Dirga had been involved in some of Brown's prior arrests. Based on the circumstances confronting Dirga, it was reasonable to believe that Brown possessed and/or had sold narcotics in violation of state criminal statutes during the night of October 14, 2013, despite Brown's claim that he had

committed no crime when questioned by Dirga. Thus, Officer Dirga had probable cause to arrest

Brown for possession and distribution of narcotics. The motion for summary judgment is

granted as to the claim that the arrest of Brown on October 14, 2013 violated the Fourth

Amendment.

## C.     Search

Brown contends that the search by Officer Dirga at the scene of his arrest exceeded the

scope of a permissible search under the Fourth Amendment. Dirga states that search was nothing

more than a pat down conducted over Brown's clothes and argues that it was valid as having

been performed in connection with Brown's arrest.

As a general rule, a warrantless search is "*per se* unreasonable under the Fourth

Amendment." *Katz v. United States*, 389 U.S. 347, 357 (1967). There are, however, recognized

exceptions to the Fourth Amendment's warrant requirement. *See Illinois v. McArthur*, 531 U.S.

326, 330 (2001) (citing examples of recognized exceptions to warrant requirement). One of

these exceptions is a search incident to arrest, which "derives from interests in officer safety and

evidence preservation that are typically implicated in arrest situations." *Arizona v. Gant*, 556

U.S. 332, 338 (2009). "This general exception has historically been formulated into two distinct

propositions. The first is that a search may be made of the *person* of the arrestee by virtue of the

lawful arrest. The second is that a search may be made of the area within the control of the

arrestee." *United States v. Robinson*, 414 U.S. 218, 224 (1973).

The court has concluded that Dirga had probable cause to arrest Brown on charges of the

sale or possession of narcotics.  The undisputed evidence indicates that Brown was under arrest

at the time that Dirga searched him and discovered narcotics in one of his pockets. "The test for

custody is an objective one: whether a reasonable person in defendant's position would have

understood himself to be subjected to the restraints comparable to those associated with a formal arrest." *United States v. Newton*, 369 F.3d 659, 671 (2d Cir. 2004) (internal quotation marks omitted). There is no requirement that an arrest be formal, "it may occur even if the formal words of arrest have not been spoken provided that the subject is restrained and his freedom of movement is restricted." *Posr v. Doherty*, 944 F.2d 91, 98 (2d Cir. 1991).

After parking his police vehicle on Liberty Street, Dirga got out of the vehicle, stepped onto the sidewalk and moved around in front of Brown as he walked down the street. Brown asked if he was under arrest and Dirga answered that he did not know but asked Brown to wait a minute. Brown told Dirga he had not committed any crime and began to walk away. Dirga asked Brown if he had anything illegal in his possession, but Brown did not respond and continued to walk down Liberty Street. Dirga then grabbed Brown's right arm, put it behind Brown's back and pushed him up against a parked car. Dirga then searched at least one of Brown's pockets and discovered crack cocaine.

This evidence indicates that Dirga had used physical force in an intrusive way to restrain Brown's liberty and/or to prevent Brown from leaving and that Brown did not feel he could leave. Thus at that point, an arrest had occurred. *See California v. Hodari D.*, 499 U.S. 621, 626 (1991) ("The word 'seizure' readily bears the meaning of a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful."); *Sibron v. New York,* 392 U.S. 40, 67 (1968) (an arrest occurred when a policeman "seized" the suspect and curtailed his movement by grabbing his collar).

Because Brown was under arrest at the point when Dirga grabbed his arm, put it behind his back and pushed him up against a car, Dirga was permitted to search Brown by virtue of the lawful arrest. *See Robinson*, 414 U.S. at 235 ("we hold that in the case of a lawful custodial

arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment"); *Bryant v. Ward*, No. 3:09CV981 (AWT), 2011 WL 2896015, at *5 (D. Conn. July 18, 2011) ("Bryant's arrest was supported by probable cause. Examining the contents of Bryant's pockets incident to his arrest was therefore a reasonable search.")  Thus, Dirga's search of Brown's pocket was reasonable as having been conducted in connection with Brown's arrest.  Dirga's motion for summary judgment is granted as to the illegal search claim.

### D.  Excessive Force

Brown claims that Dirga used excessive force against him during the arrest.  Dirga offers several arguments in opposition to this claim.

The Fourth Amendment protects individuals from the use of excessive force by a police officer during an arrest. *Graham v. Connor*, 490 U.S. 386, 394 (1989) ("Where . . . the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment").  To determine whether an officer's use of force was excessive, a court must balance the extent of the force used "against the countervailing governmental interests at stake." *Id.* at 396.  This evaluation must be made "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" and with an awareness that "police officers are often forced to make split-second judgments - - in circumstances that are tense, uncertain, and rapidly evolving - - about the amount of force that is necessary in a particular situation." *Id.* at 396-97. Thus, under this objective standard, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397.  In making this determination, a court must consider

all the facts and circumstances of the case, "including the severity of the crime," whether the arrestee "poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.

Officer Dirga contends that the force he used during Brown's arrest was limited to grabbing Brown's right arm, putting it behind Brown's back, pushing him against a car and applying handcuffs to Brown's wrists. He states that the plaintiff exhibited conduct suggesting his clear intent to flee the scene and evade arrest and to resist the application of handcuffs. Thus, according to Dirga, the minimal use of force used by him was reasonable and necessary to prevent Brown from walking away and evading arrest. In addition, Dirga contends that the nature of Brown's injuries preclude him from prevailing on his excessive force claim.

Dirga avers that "[a]t no time did I punch, kick, or in any other manner strike Franklin Brown." Dirga's Local Rule 56(a)21 Statement, Ex. C, ECF No. 111-13, Dirga Aff. ¶ 22. Dirga states that Brown resisted his attempts to place him in handcuffs which required Detective Del Mauro to take Brown to the ground. *See id.*, Dirga Aff. ¶¶ 18-20. Brown has offered the affidavit of Karen Rogala who was present at the scene of Brown's arrest. *See* Brown's Local Rule 56(a)2 Statement, Ex. 5, Rogala Aff., ECF No. 117 at 11. She avers that Dirga grabbed Brown's arm and put it behind his back and then punched Brown in the back of his head. *See id.* She further avers that after Detective Del Mauro arrived at the scene, he and Dirga threw Brown to the ground and began to beat Brown for no reason. *See id.* Brown declares in his complaint that Dirga and Detective Del Mauro punched and kicked him for no reason. *See* Compl., ECF No. 1 at 4, ¶ 2. Brown testified that he did not resist arrest and Rogala did not observe Brown offering any resistance. *See* Dirga's Local Rule 56(a)1 Statement, Ex. A, ECF No. 111-4, Brown Dep. 149:12-25; 150:1-11; 155:1-17; 158:20-25; 159:1-13; Ex. C, ECF No. 111-11,

17

Rogala Dep. 86:1-2; Brown's Local Rule 56(a)2 Statement, Ex. 5, ECF No. 117 at 11, Rogala Aff. The court finds that the affidavits of Dirga and Rogala and the Declaration of Brown have created issues of material fact as to the type and degree of force used by Dirga, the extent to which Brown may have resisted arrest, and whether the force used by Dirga was reasonable under the circumstances.

Dirga argues that even if the force used was excessive, Brown's failure to show that he was seriously injured or that he suffered more than *de minimus* injuries as a result of the use of force is fatal to his claim. In the complaint, Brown alleged that he suffered injuries to his face and knees. At his deposition, Brown testified that he did not suffer permanent physical injury and that the scar from his injury was fading away. Brown also testified, however, that he suffered psychological injuries as a result of the use of force including depression and post-traumatic stress disorder. The Second Circuit has repeatedly held that if the force used by a law enforcement officer was unreasonable and excessive, a plaintiff may recover even if the injuries inflicted were not permanent or severe. *See Robison v. Via*, 821 F.2d 913, 924 (2d Cir. 1987); *Phelan v. Sullivan*, 541 F. App'x 21, 24–25 (2d Cir. 2013). Thus, the severity of Brown's injuries is not dispositive of his excessive force claim. *See Robison*, 821 F.2d at 924 (allegations that defendant pushed plaintiff against the inside of her car door, yanked her out, threw her up against the fender, and twisted her arm behind her back causing bruises that lasted a couple of weeks were sufficient to create genuine issues of fact precluding summary judgment for defendant even though plaintiff did not seek medical treatment for her injuries). Furthermore, even if Brown only suffered psychological and not physical injuries, such injuries may be compensable under the Fourth Amendment. *See Barcomb v. Kraeger*, No. 3:14cv1159 (JBA), 2016 WL 2644885, at *5 (D. Conn. May 5, 2016) (rejecting argument "that only physical

injuries (and not Ms. Barcomb's claimed psychological trauma) may be considered in assessing excessive force claims, as it is well-established that psychological injuries may be a compensable component of excessive force cases" ).

The disputed material issues of fact pertaining to the type and degree of force employed, the manner in which the force was employed, the need for force, and the degree to which Brown might have resisted arrest preclude a determination that the force used by Dirga was reasonable given the circumstances facing him at the time of the arrest. Thus, Dirga has not demonstrated that he is entitled to judgment as a matter of law on the excessive force claim. Accordingly, the motion for summary judgment is denied as the claim of excessive force against Dirga.

### E. Qualified Immunity

Dirga argues that even if Brown has set forth a viable Fourth Amendment excessive force claim against him, he is entitled to qualified immunity as to the claim. Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). An official is entitled to qualified immunity unless (1) the facts alleged or shown by the plaintiff state a violation of a statutory or constitutional right by the official and (2) the right was clearly established at the time of the challenged conduct. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted). The Supreme Court has held that district courts have the discretion to choose which of the two prongs of the qualified immunity standard to decide first in view of the particular circumstances surrounding the case to be decided. *See Pearson*, 555 U.S. at 236.

Under the second prong, a right is clearly established if, "at the time of the challenged

conduct . . . every reasonable official would have understood that what he is doing violates that right." *al-Kidd*, 563 U.S. at 731, 741 (internal quotation marks and alterations omitted). There is no requirement that a case has been decided which is directly on point, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* "[A] broad general proposition" does not constitute a clearly established right. *Reichle v. Howards*, 566 U.S. 658, 665 (2012) (internal quotation marks omitted). Rather, the constitutional right allegedly violated must be established "in a particularized sense so that the contours of the right are clear to a reasonable official." *Id.* (internal quotation marks omitted).

Recently, the Supreme Court addressed the issue of qualified immunity and stated that "it is again necessary to reiterate the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" *White v. Pauly*, ___ U.S. ___, 137 S. Ct. 548, 552 (2017) (quoting *al-Kidd*, 563 U.S. at 742). "As this Court explained decades ago, the clearly established law must be 'particularized' to the facts of the case." *Id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Dirga concedes that the Fourth Amendment right not to be subjected to excessive force during an arrest was clearly established at the time of his arrest of Brown in October 2013. *See Graham,* 490 U.S. at  397 (Police officers' application of force is excessive, in violation of the Fourth Amendment, if it is objectively unreasonable "in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."). Dirga contends, however, that a reasonable officer would have believed that the force he used was not excessive, but necessary to lawfully arrest Brown.

The court concluded above that there are genuine disputes as to material facts involving the type and degree of force employed, the manner in which the force was employed, and the

degree to which Brown resisted arrest, and that those disputed material facts preclude a determination that the force employed by Dirga was not excessive, but was reasonable given the circumstances facing him at the time of the arrest. Because disputed issues of fact exist concerning the reasonableness of Dirga's belief that the force used during Brown's arrest was not excessive, the court cannot conclude that Dirga is entitled to qualified immunity as a matter of law. *See Weyant v. Okst*, 101 F.3d 845, 858 (the issue of the defendant police officers' qualified immunity could not be resolved as a matter of law because the determination of whether it was reasonable for the officers to believe their actions met established legal principles depended on their disputed version of the facts). Accordingly, Dirga's motion for summary judgment is denied as to his contention that he is entitled to qualified immunity as to the claim of excessive force.

**IV.    Conclusion**

Dirga's Motion for Summary Judgment [**ECF No. 111**] is **GRANTED** as to the Fourth Amendment investigatory stop and search and seizure claims and **DENIED** as to the Fourth Amendment excessive force claim.

This case will proceed only as to the Fourth Amendment excessive force claim against Dirga.

SO ORDERED this     29th        day of September, 2017, at Hartford, Connecticut.

_____/s/  DJS_____
            Dominic J. Squatrito
            United States District Judge